IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee Under the Pooling and Servicing Agreement Related to IMPAC Secured Assets Corporation, Mortgage Pass-Through Certificates, Series 2007-1, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL ACTION NO. 2:09cv324-WHA ) |
| CITIBANK, N.A., | ) (wo) ) |
| Defendant. | ) |
| JOHNNY M. PORTIS, et al., | ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CIVIL ACTION NO. 2:10cv001-WHA ) |
| CITIBANK, N.A., et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment filed by Citibank, N.A. on February 8, 2011 (Doc. #58), and a Motion for Summary Judgment filed by Johnny M. Portis and Lisa H. Portis on February 9, 2011 (Doc. #59).

The case consists of two consolidated cases which arise out of the same real estate mortgage transaction. Deutsche Bank National Trust Company ("Deutsche Bank") filed a Complaint for Declaratory Judgment against Citibank, N.A. ("Citibank") in state court. That

case was removed to federal district court on the basis of diversity jurisdiction. Johnny M. Portis and Lisa H. Portis (together referred to as "the Portises") similarly filed a Complaint in state court which was removed to this court on the basis of diversity jurisdiction. The Portises' claims are brought against both Citibank and Deutsche Bank. The cases were consolidated by Order of the court, at the request of the parties.

Citibank has moved for summary judgment on the claims of Deutsche Bank against it, and the Portises have moved for summary judgment on Deutsche Bank's claims against Citibank.

For the reasons to be discussed, the Citibank Motion for Summary Judgment is due to be GRANTED, and the Portises' Motion for Summary Judgment is due to be DENIED as moot.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and  . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovants:

This case concerns the priority of two mortgages entered into by Mark and Theresa Marvin (together referred to as "the Marvins") on a residential property in Alabama. The two mortgages are a Citi Home Equity Line of Credit Mortgage, recorded on April 17, 2006, and a mortgage to Deutsche Bank's predecessor-in-interest, Renasant Bank, recorded on October 24, 2006.

The Marvins originally entered into a mortgage on their property with Regions Bank in 2005. In March 2006, Theresa Marvin entered into a Home Equity Line of Credit ("Home Equity") agreement with Citibank, secured by a second mortgage on the same property. The draw period on this agreement was ten years. The agreement provided that Theresa Marvin would be charged an early closure fee if within 36 months of the date of the agreement she requested that the account be closed, or took any other action which resulted in the release of the mortgage. Home Equity Agreement, Def. Ex. B, at 4. At the same time, the Marvins entered into a Home Equity Mortgage. The Home Equity mortgage provides that it is an open-end mortgage pursuant to the provisions of Alabama Code § 35-10-26. The Home Equity mortgage further provides that upon payment of all sums secured by the mortgage and any applicable early closure fee or other fees, and upon (a) expiration of the agreement or (b) the Marvins' request, Citibank shall release the mortgage, and the Marvins will pay "all costs of recordation along with any reconveyance fees and any statement of obligation fee, if any." Home Equity Mortgage, Def. Ex. C, at 7.

In October 2006, the Marvins entered into a refinancing mortgage with Renasant Bank. The closing was overseen by an attorney. Deutsche Bank now stands in the shoes of Renasant Bank, and in this Memorandum Opinion the court will refer to actions and agents of Renasant simply as being those of Deutsche Bank.

As part of the refinancing on their property, the Marvins paid off their Regions mortgage and they received a Discharge of Mortgage, which was recorded.

Citibank provided the closing attorney a Payoff Statement for the Citibank Home Equity mortgage showing a total payoff amount of $181,168.69, including a $789 early closure release

4

fee. The letter sent by Citibank in response to the request for the payoff amount states in bold lettering as follows:

> **If the account is a Home Equity Line of Credit/Equity Source Account/Preferred Line, the Close/Termination letter must accompany the payoff funds in order to secure a release of lien. If this letter is not returned with the payoff funds, the line will remain OPEN and it will be considered a paydown only. This may cause the account to incur additional fees.**

Def. Exhibit J.

A check was written from the closing attorney's trust account in the amount of $181,168.59, and mailed to Citibank. The check included a payment of $789.00 for the Early Closure Release Fee. The check referenced "marvin413refi Payoff." Pl. Ex. #16. No Close/Termination letter accompanied the check. Citibank negotiated the check.

Citibank states that it sent a letter dated October 23, 2006 to Theresa Marvin informing her that Citibank needed authorization if she wished to close the Home Equity account. The Marvins deny ever receiving this letter. Deutsche Bank also states that Citibank's standard procedure would require Citibank to contact the originator of the payoff check, among other steps, which were not followed.

The title insurance commitment obtained by Renasant Bank required the mortgage to Citibank to be paid in full and canceled of record. While paid in full, the Home Equity mortgage was not cancelled of record.

In January 2007, Citibank sent Theresa Marvin a check for $789, which was a return of the Early Closure Release Fee. There was no explanation for the check and the Marvins thought it was a refund of overpayment of the pay off. In February, the Marvins called Citibank and asked whether they could use the Citibank account. The Marvins state that after talking with

Citibank they believed that the Citibank mortgage had been released and then reopened as a third mortgage. The Marvins told Citibank they had refinanced the Citibank mortgage.

Theresa Marvin cashed the $789 check on March 13, 2007.

The Marvins took advances against the Citibank Home Equity Account in the amount of $175,000.00 in February 2007 and $4,950 in May 2007.

The Marvins defaulted on their Renasant mortgage and the Citibank Home Equity mortgage. On September 11, 2008, Deutsche Bank foreclosed on the Renasant mortgage. At the foreclosure sale, Renasant was the highest bidder at $833,000.00. On November 18, 2008, Citibank foreclosed on the Marvins' Home Equity mortgage for a credit bid of $194,149.60, and recorded its foreclosure deed.

The Portises contend that they acquired the Marvins' statutory right to redeem Citibank's interest in the property. They say that after the Deutsche Bank foreclosure, but before the Citibank foreclosure, specifically in October 2008, Sherwin Williams obtained a judgment against Theresa Marvin. That judgment was filed with the Judge of Probate of Montgomery County, Alabama.

The Portises state that on or before November 3, 2009, they purchased Sherwin Williams' right to redeem the property as judgment creditor. The Portises state that they faxed a letter to Citibank and requested a statement of the amount due to redeem the property from Citibank. Citibank did not respond to the letter. The Portises also state that on November 13, 2009, they purchased the Marvins' right of redemption, and that the Marvins executed a Quit Claim deed granting all of their rights and interests in the property to the Portises.

Citibank has expressed no position on whether the Portises have a right of redemption. The Portises concede that they only have a right of redemption if Citibank's mortgage has priority over Deutsche Bank's mortgage.

## IV. DISCUSSION

Two primary issues are presented in the pending Motions for Summary Judgment: priority of rights as between the liens held by Deutsche Bank and Citibank and, secondarily, the Portises' right of redemption. Because the Portises concede that they have no right of redemption if Deutsche Bank's mortgage has priority, the court addresses the priority question first.

### A. Priority Dispute

Deutsche Bank has asked for a declaration, and other relief, that the mortgage it recorded through the refinancing transaction with the Marvins is subrogated to the mortgage of Regions Bank, so that Deutsche Bank has priority over Citibank's Home Equity mortgage.[1] Deutsche Bank argues for both equitable and conventional subrogation.

#### 1. Equitable Subrogation

---

[1] Deutsche Bank has asked in its Complaint that the court declare that Citibank was obligated to have released its mortgage, so its mortgage is due to be cancelled; if Citibank is entitled to security for the funds advanced on or after February 26, 2007, that security is subordinate to the Deutsche Bank mortgage; that Deutsche Bank is equitably subrogated to the Regions Bank mortgage; that Deutsche Bank's foreclosure effectuated a foreclosure on the second mortgage; that the Citibank foreclosure was of no effect and Citibank acquired no title in the property; and Deutsche Bank holds legal and equitable title in the property.
    It is unclear the authority upon which Deutsche Bank contends it would be entitled to such relief, other than through subrogation.

Citibank argues that its Home Equity montage was first in time to that of Deutsche Bank, so is first in right, and Deutsche Bank cannot avail itself of the doctrine of equitable subrogation. Citibank states that Deutsche Bank cannot satisfy the fourth and fifth requirements for equitable subrogation.

In Alabama, the elements of equitable subrogation as follows:

(1) The loan or advancement must have been made and used to pay off the debt secured by the prior lien and it is the lender's duty to see that the money is so applied, for the right of subrogation does not arise when the money advanced is to be applied at the discretion of the debtor; (2) the parties must contemplate that the lender will have security of equal dignity with the lien discharged by the payment; (3) the whole debt must be paid before subrogation can be enforced, that is, pro tanto subrogation is not recognized; (4) the lender at the time of the loan must be ignorant of the intervening lien or encumbrance and such ignorance must not be the consequence of culpable negligence; (5) the intervening lienor must not be burdened or embarrassed.

*Foster v. Porter Bridge Loan Co., Inc*. 27 So.3d 481, 484 (Ala. 2009).

Citibank argues that Deutsche Bank cannot satisfy the fourth requirement because Renasant Bank, through its agent, knew of Citi's Home Equity Agreement and Mortgage. Citibank also states that the fifth requirement cannot be satisfied because, if Citibank does not have priority, it will lose $194,149.60 because it will not be able to collect on the sums it advanced based on the fact that the Home Equity Mortgage had not been terminated.

Deutsche Bank admits that its predecessor had actual knowledge of the Citibank Home Equity mortgage. Deutsche Bank contends, however, that it did not have actual knowledge that the Home Equity mortgage was not released, and its actions do not prevent equitable subrogation on Deutsche Bank's behalf. To proceed on this theory, however, Deutsche Bank asks this court to depart from, or at least extend, Alabama law in two ways.

One of the ways in which Deutsche Bank argues this court should depart from Alabama law is to follow the approach of the *Restatement (Third) of Property*: Mortgage § 7.6 cmt. e (1997). The *Restatement* offers an approach whereby subrogation can be granted even if a lender had actual knowledge of an intervening interest, if the lender reasonably expected to get security with a priority equal to the mortgage being paid.

The Alabama Supreme Court has addressed the knowledge element of equitable subrogation on various occasions and has never adopted the *Restatement* approach, although it has acknowledged the *Restatement* approach. *See Ex Parte Lawson*, 6 So.3d 7 (Ala. 2008). Most recently, the Court, relying on precedent from another jurisdiction, explained that there are three approaches regarding knowledge in the equitable subrogation context: the majority, the minority, and the *Restatement* views. *See Foster v. Porter Bridge Loan Co.*, 27 So.3d 481, 486 (Ala. 2009) (citing *Hicks v. Londre*, 125 P.3d 452 (Colo. 2006)). The majority view is that actual knowledge of an intervening lien precludes the application of equitable subrogation, but constructive knowledge does not. *Id.* The facts in *Foster* involved a judgment lien which was unknown to the lender. The Alabama Supreme Court stated as follows:

> In accordance with the traditional rule of this State applied in *Whitson* and its progeny and with the majority view that constructive knowledge does not preclude the application of the doctrine of equitable subrogation, we hold that the constructive notice resulting from a judgment lien created under § 6-9-211 does not satisfy the knowledge requirement of equitable subrogation so as preclude the application of that doctrine.

*Id.* at 487. Therefore, the Alabama Supreme Court has applied the general rule, with exceptions for materialmen's liens, *id.*, that constructive knowledge of an existing junior lien does not preclude the doctrine of equitable subrogation, but actual knowledge at the time of the loan does

9

preclude equitable subrogation. The Alabama Supreme Court has not adopted the *Restatement* approach, and the court finds no basis for concluding that it would do so in this case.

Under the general rule, therefore, Deutsche Bank cannot establish the fourth element necessary to obtain equitable subrogation because there is no dispute that Deutsche Bank, through its agent, was actually aware of the Citibank Home Equity mortgage at the time of the refinancing loan.

The second change in Alabama law argued by Deutsche Bank, however, is that in the context of a refinanced loan, the knowledge referred to in the fourth equitable subrogation element should be knowledge of the release of the lien, rather than the initial existence of the lien. Under this theory, actual knowledge of the initial existence of the lien, without actual knowledge that the lien had not been released, would not bar equitable subrogation. Deutsche Bank cites to no Alabama cases in which the knowledge element was applied at a time subsequent to the lending transaction. And, in fact, the fourth element of equitable subrogation as stated in *Porter* is "the lender *at the time of the loan* must be ignorant of the intervening lien or encumbrance and such ignorance must not be the consequence of culpable negligence." *Id.* at 484 (emphasis added) (quoting *Federal Land Bank of New Orleans v. Henderson, Black & Merrill Co.*, 42 So. 2d 829, 833 (Ala. 1949)).

The authority upon which Deutsche Bank relies, which is from another jurisdiction, *JPMorgan Chase Bank v. Howell*, 883 N.E.2d 106 (Ind. Ct. App. 2007), did not establish even in that jurisdiction that knowledge should be evaluated at a point later than the time of the loan. Instead, the rule applied in that case was that a refinancing mortgagee could be entitled to subrogation even if it had "actual or constructive knowledge of an existing lien on the property,"

unless the junior lienholder is disadvantaged or the mortgagee is culpably negligent. *Id.* at 111. In that case, equitable subrogation was allowed where the payoff was sent along with a letter requesting that the equity line be closed, but the payoff fell short, and the lien holder did not disclose the shortfall, or close the lien, but instead continued to lend money. *Id.* at 109.

Essentially, what Deutsche Bank has argued for is the application of a new rule, wherein actual knowledge of an existing lien is not determinative in the refinancing context, but the court must instead evaluate the conduct of the mortgagee in light of its knowledge.  In the absence of any authority supporting Deutsche Bank's theory, and given that Alabama has adopted a requirement that there be no actual knowledge of the existing lien at the time of the loan, albeit not in the refinancing context, the court must conclude that summary judgment is due to be GRANTED to Citibank on that basis alone.

Even if the court were to apply this theory, however, Deutsche Bank would not be entitled to equitable subrogation. Deutsche Bank states that its agent[2] did not act culpably, or even negligently,[3] because there was no requirement that the release of the Home Equity mortgage be written, and there was no request to Citibank to forward a release to Deutsche Bank once it was accomplished.

As earlier set out, however, the letter sent by Citibank in response to the request for the payoff amount states in bold lettering that:

---

[2] The agent of Deutsche Bank's predecessor-in-interest, Renasant Bank.

[3] Deutsche Bank points to Alabama cases as eschewing a mere negligence standard. Those cases, however, were cases analyzing a constructive notice standard as to the existence of the lien, not a rule regarding conduct of the lender in light of actual knowledge. *See, e.g., Whitson v. Metropolitan Life Ins. Co.*, 142 So. 564 (Ala. 1932). Therefore, they do not answer what standard Alabama courts would apply if they adopted the rule urged by Deutsche Bank.

> the Close/Termination letter must accompany the payoff funds in order to secure
> a release of lien.  If this letter is not returned with the payoff funds, the line will
> remain OPEN and it will be considered a paydown only.  This may cause the
> account to incur additional fees.

Def. Exhibit J.

The letter also says that release documents will be sent approximately 30 days after the payoff funds are received.  *Id.*

Based on this document, which it is undisputed Deutsche Bank's agent received, the court cannot agree that Deutsche Bank's agent bore no responsibility for requesting a release of the Home Equity mortgage in writing.  To the contrary, Deutsche Bank was told how to, and was in the best position to accomplish, release of the Home Equity mortgage.  The facts of this case, therefore, fall within the reasoning of cases, cited by Citibank, in which equitable subrogation has been denied.  *See, e.g., Morequity, Inc. v. Fifth Third Bank*, No. C-080824, 2009 WL 1652908, *3  (Ohio App. 1 June 23, 2009) (denying equitable subrogation to lender because lender was in the best position to secure its interests by following proper procedures to have the equity line closed, or confirming that the equity line had been closed and properly released); *Green Tree Servicing, LLC v. U.S. Bank National Assoc.*, 192 P.3d 1014 (Colo. App. 2007) (denying equitable subrogation where commercial lender with actual knowledge of a prior-recorded deed of trust was notified that the account had to be closed by the homeowner and failed take steps to close the account).[4]  Even under a "culpable negligence" approach, there is precedent which indicates that Deutsche Bank would be denied equitable subrogation.  *See*

---

[4] Equitable subrogation law in Colorado is described as being "closer to the *Restatement*."  *Hicks v. Londre*, 125 P.3d 452 (Colo. 2005).  Alabama courts are aware of this approach, but did not adopt it.  *See Foster v. Porter Bridge Loan Co., Inc.*, 27 So. 3d 481, 486 (Ala. 2009) (citing *Hicks*).

*Liberty Mortgage Corp., Inc. v. National City Bank*, 755 N.E.2d 639, 643 (Ind. App. 2001) (denying equitable subrogation because the closing agent was notified that a signed statement was necessary to close the account, so the refinancing company acted with culpable negligence because it "had the ability to avert harm by simply procuring such a statement . . . when it submitted payment to pay off the account.").

    The court concludes, therefore, that summary judgment is due to be GRANTED on the alternative basis that, even if actual knowledge of Citibank's Home Equity mortgage at the time of the loan was not enough, standing alone, to bar Deutsche Bank's equitable subrogation, actual knowledge combined with Deutsche Bank's failure to avert harm by providing a "Close/Termination" letter, as expressly required by Citibank to release the Marvins' lien, preclude equitable subrogation as a matter of law.[5]

2. Conventional Subrogation

Deutsche Bank states that if it is not entitled to relief under the doctrine of equitable subrogation, the court should apply conventional subrogation and find that Deutsche Bank is subrogated to the rights of Regions Bank, whose original first mortgage was paid off and discharged of record through the refinancing. Deutsche Bank states that although there is no

---

[5] Deutsche Bank also has argued that Citibank was on notice, through a conversation with the Marvins in February 2007, that the Marvins had refinanced the Citibank mortgage. Deutsche Bank contends, therefore, that Citibank was in a position to take appropriate action to suspend the Marvins' line of credit and release the mortgage, instead of allowing the Marvins to take out additional advances. The court cannot conclude, however, that Citibank's advancing further sums to the Marvins under the circumstances brings this case outside of the reasoning of the cases discussed above. *See, e.g., Morequity, Inc.*, 2009 WL 1652908 at *1 (no equitable subrogation in favor of refinancing lender where refinancing mortgage was recorded and additional sums were advanced on the equity line which had not been closed as a result of the refinance).

express agreement for conventional subrogation in this case, an express agreement is not required because the facts and circumstances show that it was the intention of the parties that the lender was to have the same priority as the discharged lien.

Citibank contends that conventional subrogation is not traditionally applied to mortgage transactions by Alabama courts in recent case law. Citibank argues that although some older Alabama cases apply conventional subrogation, it is not a consistent application.

The Alabama Supreme Court stated, in a mortgage case, that under the "circumstances, there is no basis for the application of the doctrine of conventional subrogation, which must rest upon an agreement between the parties . . . ." *Whitson v. Metropolitan Life Ins. Co.*, 142 So. 564, 567 (Ala. 1932). The cases relied on by Deutsche Bank pre-date *Whitson*. *See Alison v. Patrick*, 116 So. 918 (Ala. 1927); *Allen v. Caylor*, 24 So. 512 (Ala. 1898). The court cannot conclude, therefore, that Deutsche Bank can avail itself of this remedy under Alabama law.[6]

### 3. Equitable Estoppel

Finally, Deutsche Bank contends that Citibank is equitably estopped from claiming priority. Deutsche Bank relies primarily on the fact that the check remitted to Citibank included the amount designated as an early closure fee, and the check itself noted that it was a "refi

---

[6] Even if conventional subrogation could be applied in Alabama in the real estate mortgage context, Deutsche Bank concedes that gross or culpable negligence can bar the application of conventional subrogation. Doc. #70 at 36. Therefore, the same facts regarding Deutsche Bank's predecessor's failure to avert the harm by submitting a letter request for closure of the account, even though notified that it should do so, are also facts which preclude conventional subrogation. *See Liberty Mortgage Corp., Inc. v. National City Bank*, 755 N.E.2d 639, 643 (Ind. App. 2001).

14

Payoff." Deutsche Bank also points to evidence of internal Citibank procedures to verify a homeowner's intent, and states that such procedures were not followed. Deutsche Bank finally argues that Citibank did not rely on priority in advancing new sums to the Marvins.

In support of its argument, Deutsche Bank cites *Mut. Life Ins. Co. v. Grissett*, 500 F. Supp. 159 (M.D. Ala. 1980). In *Grissett*, the lender gave a payoff figure, accepted a check, and issued a receipt reciting that the purpose of the payment was "liquidation of the loan." *Id.* at 163. The court concluded that these actions estopped the lender from claiming priority.

The instant case is distinguishable in that Citibank never acknowledged that the payment was a pay-off which closed the loan. In fact, although Citibank accepted the payment check, after failing to receive the required Close/Termination letter Citibank refunded the early closure fee portion of the payment, albeit to the Marvins. Further, as Citibank points out, *Grissett*, and the state cases upon which it relies, did not involve equity lines, which can be paid down, but remain open. Citibank's actions in advancing additional sums was consistent with a Home Equity mortgage that had not been released. The court cannot conclude, therefore, that Citibank is equitably estopped from claiming priority in this case.[7]

### B. Right of Redemption

#### 1. The Portises' Right of Redemption

---

[7] Having concluded that the Motion for Summary Judgment is due to be GRANTED on the grounds discussed, the court does not address whether Deutsche Bank's claims are precluded by Alabama Code § 35-10-26, or whether the fifth requirement of equitable subrogation applies. The court notes, however, that if Deutsche Bank's predecessor had submitted a written request as outlined in the statute, Citibank would have been required by statute to cause the mortgage to be satisfied.

Deutsche Bank argues that the Portises' Motion for Summary Judgment should be denied because the Portises have moved for summary judgment on the claims in Deutsche Bank's Complaint, but there are no claims asserted by Deutsche Bank against the Portises. The Portises reply that they have standing to move for summary judgment because the case brought by Deutsche Bank has been consolidated with the Portises' case. Having concluded that Citibank is entitled to summary judgment, the Portises' motion against Deutsche Bank on Deutsche Bank's claims against Citibank, even if procedurally appropriate, is nevertheless moot.

The Portises and Deutsche Bank have briefed the issues of Portises's ability to redeem the property from Citibank, but Citibank has not. Even if the court construed the Portises' Motion for Summary Judgment as a motion on its own claims, the relief it seeks would be a redemption right from Citibank, not Deutsche Bank, but the summary judgment motion is asserted against Deutsche Bank.[8] Citibank has expressly stated that it takes no position in its motion regarding whether the Portises have a statutory right of redemption. *See* Doc. #58 at11 n.47. Therefore, the court finds it inappropriate to decide these issues without Citibank having an opportunity to address the right of redemption.[9] Accordingly, the Portises' claim for right of

---

[8] The court declines Deutsche Bank's request to enter summary judgment on its behalf pursuant to Rule 56(f)(1), as the opposing parties have not been given notice and opportunity to respond. *See* Fed. R. Civ. Pro. 56(f)(1).

[9] One example of the arguments briefed by Deutsche Bank and the Portises but not Citibank, because Citibank was not called upon to address such an argument, is an argument by the Portises that they properly claimed a right to redeem the property in a letter to Citibank, but Citibank did not respond to the letter. Deutsche Bank's contention is that the letter was ineffectual because the Portises do not have a right of redemption as a judgment creditor or assignee of Sherwin Williams.

redemption cannot be considered in ruling on their Motion for Summary Judgment, and is left for trial.

### 2.  Deutsche Bank

Deutsche Bank has stated that it has requested that the court declare that Deutsche Bank is entitled to redeem the property from Citibank for an appropriate redemption price.  Doc. #70, at 12 n.11.  Deutsche Bank states that Citibank has not moved for summary judgment as to this claim, and Citibank does not appear to have replied to this argument.  Therefore, the court concludes that Deutsche Bank also has a redemption claim left to be decided at the trial of this case.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  Citibank's Motion for Summary Judgment is GRANTED and judgment is entered in favor of Citibank and against Deutsche Bank as to all of Deutsche Bank's claims against Citibank except its request that it be allowed to redeem the property with the payment of an appropriate redemption price.

2.  The Portises' Motion for Summary Judgment, to the extent that it is properly asserted in this case, is DENIED as moot, based on the disposition of Citibank's motion.

Deutsche Bank's and the Portises' claims for right of redemption against Citibank are left for trial.

Done this 6th day of April, 2011.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE